UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ALEMAYEHU GETACHEW,

    Plaintiff,

v.

CENTRAL OHIO WORKFORCE
INVESTMENT CORPORATION, et al.,

    Defendant.

Case No. 2:11-cv-169
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter is before the Court on defendant Central Ohio Workforce Investment Corporation's ("COWIC") motion to dismiss (Doc. No. 37), which is hereby **GRANTED** and defendant Goodwill Industries of Central Ohio, Inc.'s ("Goodwill") motion to dismiss (Doc. No. 38), which is hereby **GRANTED**.

## I. BACKGROUND

The facts relied upon in this Opinion and Order were taken from the pleadings or documents that are properly considered part of the pleadings. *See Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (documents are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim); *see also Yeary v. Goodwill Indus.-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997) (if extrinsic materials merely "fill in the contours and details of the plaintiff's complaint, and add nothing new," they may be considered without converting the motion to one for summary judgment).

In June 2009, the plaintiff participated in a "Job Expo" at COWIC. The plaintiff contends that his application for employment was denied based upon his race, national origin,

and age. On February 24, 2011, the plaintiff, who is proceeding without the assistance of counsel, filed this action claiming discrimination and retaliation.

On March 11, 2011, Goodwill filed a motion to dismiss (Doc. No. 4) and COWIC filed a motion to dismiss on March 18, 2011 (Doc. No. 7). On May 13, 2011, after the motions were briefed, the plaintiff moved to amend his complaint. (Doc. No. 20.) On August 23, 2011, the Court granted the plaintiff's motion to amend and ordered him to file his amended complaint within seven days of the date of the order. (Doc. No. 23.)

On October 6, 2011, the Court issued an Order (Doc. No. 24) noting that the plaintiff had failed to meet the deadline for filing his amended complaint and finding that the motions to dismiss the original complaint were ripe for resolution. In response to that Order, on October 12, 2011, the plaintiff filed a motion in which he stated that he did not receive the Court's Order granting his motion to amend and that "it was totally not his fault." (Doc. No. 27.) The plaintiff requested that he be allowed to amend his complaint on or before October 25, 2011.

Before the Court ruled on his request to file an untimely amended complaint, on October 24, 2011, the plaintiff filed a second motion to amend his complaint. (Doc. No. 30.) On December 29, 2011, the Court issued an Order granting in part and denying in part that motion. (Doc. No. 32.) Instead of filing an amended complaint with all of his claims, on January 5, 2012, the plaintiff filed a motion to amend his complaint, in which he integrated his original complaint. (Doc. No. 33.)

On January 9, 2012, the Court granted the plaintiff's motion and indicated that the amended complaint specifically asserts claims under 42 U.S.C. § 1983 ("Section 1983") against

2

both of the defendants; a claim under 42 U.S.C. § 1981 ("Section 1981") against COWIC; and an equal protection claim under the Fourteenth Amendment against Goodwill. The Court also noted that the claims in the original complaint remained pending and include claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, against both defendants; an equal protection claim against COWIC; a claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, against Goodwill; and a retaliation claim under Section 1981 against Goodwill.

On January 17, 2012, COWIC filed a motion to dismiss (Doc. No. 37) and on January 23, 2012, Goodwill filed a motion to dismiss (Doc. No. 38). The plaintiff has failed to respond to either of these motions.

On February 14, 2012, the plaintiff filed a motion to stay this case for one hundred days because he was experiencing "severe economic depression." (Doc. No. 40.) The following day, the Court denied that motion, explaining:

> Plaintiff's motion does not explain why his economic position prevents him from filing a written response to the pending motions to dismiss, should he intend to oppose those motions. Plaintiff's motion to stay, Doc. No. 40, is therefore DENIED.
>
> If plaintiff intends to oppose the motions to dismiss, he must file written responses to those motions no later than March 2, 2011. Plaintiff is advised that his failure to respond to the motions may result in the grant of those motions.

(Doc. No. 41.)

The plaintiff did not file any memoranda in opposition to the pending motions to dismiss.

3

## II. STANDARDS

### A. Dismissal For Failure to State a Claim

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) (clarifying the plausibility standard articulated in *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. The factual allegations of a pleading "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

### B. *Pro Se* Litigants

A *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than are formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A court should make a reasonable attempt to read the pleadings of a pro se litigant to state a valid claim on which the plaintiff could prevail, despite any failure to cite proper legal authority, confusion of various legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *Ashiegbu v. Purviance*, 74 F. Supp. 2d 740, 749 (S.D. Ohio 1998) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). "This standard does not mean, however, that pro se plaintiffs are entitled to take every case to trial." *Id.* (citing *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996)). "Indeed, courts should not assume the role of advocate for the *pro se* litigant." *Id.* (citing *Hall,*

4

935 F.2d at 1110).

## III. ANALYSIS

### A. Title VII and the ADEA

COWIC and Goodwill both move to dismiss as untimely the Title VII claims filed against them. Goodwill also moves to dismiss as untimely the ADEA claim filed against it. Under Title VII, if the Equal Employment Opportunity Commission ("EEOC") has elected not to prosecute a citizen's discrimination charge, it must notify the petitioner of his or her right to initiate a private enforcement lawsuit. "Within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge." 42 U.S.C. § 2000e-5(f)(1). The federal courts have strictly enforced Title VII's ninety-day statutory limit. In *Baldwin County Welcome Center v. Brown*, 466 U.S. 147 (1984) (per curiam), an opinion that dismissed a *pro se* Title VII complaint filed outside of the limitations period, the Supreme Court stated that "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." *Id.* at 152 ("experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law").

Similarly, the ADEA requires that a plaintiff commence a civil action within ninety days of receiving the EEOC's Notice of Suit Rights. The ADEA provides as follows:

> If a charge filed with the Commission under this chapter is dismissed or the proceedings of the Commission are otherwise terminated by the Commission, the Commission shall notify the person aggrieved. A civil action may be brought under this section . . . against the respondent named in the charge within 90 days after the date of the receipt of such notice.

29 U.S.C. § 626(e) As is true with claims under Title VII, the ADEA's ninety-day limitations

5

period is strictly enforced, and failure to bring a claim under the ADEA within that limitations period is grounds for dismissal of the claim. *See Stewart v. Columbus S. Power*, No. 2:10-cv-00232, 2010 U.S. Dist. LEXIS 65219, at *9 (S.D. Ohio June 30, 2010).

In the instant action, the plaintiff initiated this action over two hundred (200) days after receiving the EEOC's Notice of Suit Rights, more than one hundred and ten (110) days after the ninety-day period had expired. The plaintiff expressly admits in his complaint that he filed his complaint more than ninety days after receiving that Notice. Accordingly, the plaintiff's Title VII and ADEA claims must be dismissed as untimely.

**B. Section 1983**

The plaintiff alleges that COWIC violated the equal protection clause of the Fourteenth Amendment and Section 1983 because of the phrase "minorities are encouraged to apply" that appeared on the June 2009 Job Expo flyer and because he now claims that COWIC "denied" his "federally funded job training." As to Goodwill, the plaintiff alleges that its discriminatory hiring policy prevented him from being hired.

The Fourteenth Amendment is only implicated if there is state action. *See Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 172 (1972). "To establish a claim for relief under the Equal Protection Clause, a plaintiff must demonstrate that the government treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 298 (6th Cir. 2006) (citation omitted). Similarly, for a private corporation like COWIC to "act under color of state law" for Section 1983 purposes, "its actions [must] so approximate the state action that they may be fairly

6

attributed to the state." *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000). "In cases under Section 1983, 'under color' of law has consistently been treated as the same thing as the 'state action required under the Fourteenth Amendment." *United States v. Price*, 383 U.S. 787, 794 n.7 (1966) (citing examples). "The ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights fairly attributable to the State?" *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982) (citation omitted).

Courts utilize four tests to determine when private conduct can be attributed to the state. "These tests are: (1) the public function test, (2) the state compulsion test, (3) the symbiotic relationship/nexus test; and (4) the 'entwinement' test." *Riester v. Riverside Cmty. Sch.*, 257 F. Supp. 2d 968, 972 (S.D. Ohio 2002) (citing *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000) and *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Assoc.*, 531 U.S. 288, 295 (2001)). COWIC and Goodwill argue that they are entitled to dismissal of these claims because, *inter alia*, neither is a state actor under any of the four tests. This Court agrees.

### 1. The Public Function Test

To satisfy the public function test, a plaintiff must show that the private actor performs "a public function which has traditionally and exclusively been reserved to the State." *Durante v. Fairlane Town Ctr.*, 201 Fed. Appx. 338, 341 (6th Cir. Oct. 18, 2006) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974)). The Sixth Circuit has noted that this test "is difficult to satisfy" because although "'many functions have been *traditionally* performed by governments, very few have been *exclusively* reserved to the State.'" *Id.* (quoting *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1456 (10th Cir. 1995)) (emphasis in original). Further, the

7

Sixth Circuit has found that "'[o]nly functions like holding elections, exercising eminent domain, and operating a company-owned town fall under this category of state action.'" *Id.* (citation omitted).

In the case *sub judice*, the plaintiff makes no allegations that COWIC or Goodwill perform any public function that has been traditionally and exclusively reserved to the state. Also, the complaint and amended complaint provide no basis for the Court to make a reasonable inference that either COWIC or Goodwill performed any such function. Thus, neither COWIC nor Goodwill can be considered state actors under the public functions test.

### 2. State Compulsion Test

"The state compulsion test requires that the state 'exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state.'" *Wilcher v. City of Akron*, 498 F.3d 516, 519 (6th Cir. 2007) (quoting *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1991)). To satisfy this test, "a plaintiff must allege and prove that state officials coerced or participated in a company's decision-making to the extent required to trigger state actor status. *Id.* at 520.

Here, there are no allegations, nor may it be reasonably inferred, that any state officials coerced Goodwill into deciding not to hire the plaintiff; nor are there any allegations that such officials participated in that decision. Further, the plaintiff has not alleged, nor may it be reasonably inferred, that COWIC was coerced or encouraged by the state into placing the complained-of language in the Job Expo flyer or in denying the plaintiff a WIA scholarship. Consequently, the neither COWIC nor Goodwill can be considered state actors under the state compulsion test.

8

### 3. The Symbiotic Relationship Or Nexus Test

"Under the symbiotic relationship test, the action of a private party constitutes state action where 'there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself.'" *Wilcher*, 498 F.3d at 520 (quoting *Wolotsky*, 960 F.2d at 1335). "It must be demonstrated that the state is intimately involved in the challenged private conduct in order for that conduct to be attributed to the state[.]" *Wolotsky*, 960 F.2d at 1335.

In the instant action, nowhere has the plaintiff alleged, nor can it be reasonably inferred, that the state was involved in any way in Goodwill's decision not to hire the plaintiff or in COWIC's printing of the Job Expo flyer or the purported denial of the WIA scholarship. Accordingly, COWIC and Goodwill cannot be considered state actors under the symbiotic relationship or nexus test.

### 4. The Entwinement Test

Under the entwinement test, courts determine whether the "nominally private character" of the private entity "is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings [such that] there is no substantial reason to claim unfairness in applying constitutional standards to it." *Brentwood*, 531 U.S. at 298. Here, there is nothing in the complaint or the amended complaint "demonstrating that Defendants and their employees are considered employees of the state." *Zeigler v. Miskiewicz*, No. C2-07-0272, 2008 U.S. Dist. LEXIS 17025, at *23 (S.D. Ohio March 5, 2008). Nor is there any indication in the complaints that either COWIC/Goodwill or the state "would cease to exist if it lacked the involvement of the other." *Id.* Thus, under this test too, neither COWIC nor Goodwill can be

9

considered state actors.

## C. Section 1981

The plaintiff brings two claims under Section 1981: one against COWIC for discrimination and one against Goodwill for retaliation. COWIC moves for dismissal of the claim against it.

"Section 1981 prohibits racial discrimination in the making and enforcing of private contracts." *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001). "[To] prevail on a section 1981 claim, a litigant must prove intentional discrimination on the basis of race, which involves a high threshold of proof." *Chapman v. Higbee Co.*, 319 F.3d 825, 832-33 (6th Cir. 2003). To establish a claim for racial discrimination under Section 1981, a plaintiff must show that: "(1) he belongs to an identifiable class of persons who are subject to discrimination based on their race; (2) the defendant intended to discriminate against him on the basis of race; and (3) the defendant's discriminatory conduct abridged a right enumerated in section 1981(a).'" *Amini v. Oberlin College*, 440 F.3d 350, 358 (6th Cir. 2006) (citation omitted).

There is nothing in either the amended complaint or the original complaint regarding any form of "contract" that plaintiff had with COWIC. Moreover, there is no allegation that COWIC treated the plaintiff any differently than it treated any non-minority. On the contrary, in the sole action relating to employment services that the plaintiff attributes to COWIC, the plaintiff specifically notes the helpfulness of COWIC's employee: "COWIC's Human Resource

---

[1]The United States Supreme Court held in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002), that the *prima facie* case "is an evidentiary standard, not a pleading requirement." The Court reviews the *prima facie* case standard in the Rule 12(b)(6) context to determine whether a plaintiff has stated a plausible claim for relief–not to determine if the standard is met.

10

Administrator, Stefanie Mortensen, helped the plaintiff complete [his] application" for "training specialist, job retention technician, and rehabilitation specialist" positions with Goodwill. Complaint ¶¶50, 51; *see also id.* at ¶53 ("Mortensen was professional, respectful, and optimistic that plaintiff would be hired."). Given this, there is nothing in the pleadings from which the Court could reasonably infer that COWIC discriminated against plaintiff in an employment contract.

Accordingly, the Court concludes that plaintiff has failed to allege a plausible discrimination claim pursuant to Section 1981.

## IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Central Ohio Workforce Investment Corporation's motion to dismiss (Doc. No. 37) and **GRANTS** Goodwill Industries of Central Ohio, Inc.'s motion to dismiss (Doc. No. 38). The Clerk is **DIRECTED** to remove Central Ohio Workforce Investment Corporation as a defendant in this action. The only claim remaining before the Court is the retaliation claim filed under 42 U.S.C. § 1981 against Goodwill.

**IT IS SO ORDERED.**

\_\_My 3, 2014\_\_
**DATE**

EDMUND A. SARGUS, JR.
**UNITED STATES DISTRICT JUDGE**

11